BRANIFF AIRWAYS, INC., Phillip Addabbo, and Morton D. Stein, as Executor of the Estate of Maurice Berg, deceased, Plaintiffs-Appellants,

v.

CURTISS–WRIGHT CORPORATION, Defendant-Appellee.

Nos. 423–426, Dockets 32884–32887.

United States Court of Appeals
Second Circuit.

Argued April 8, 1969.

Decided May 19, 1969.

Wilbur E. Dow, Jr., New York City
(Dow, Stonebridge & Wallace, New York
City), for appellants Braniff and Addab-
bo.

W. Shelby Coates, Jr., New York City,
for appellant Stein.

James F. Coughlin, New York City
(Mendes & Mount, New York City, Er-
nest D. Kennedy, New York City, of
counsel), for appellee.

Before FRIENDLY, KAUFMAN and
HAYS, Circuit Judges.

HAYS, Circuit Judge:

Braniff Airways, Inc., Phillip Addab-
bo, and Morton D. Stein, as executor of
the estate of Maurice Berg, appeal from
a judgment of the United States District
Court for the Southern District of New
York dismissing their complaints in ac-
tions against Curtiss-Wright Corpora-
tion arising out of an airplane crash
that occurred near Miami, Florida on
March 25, 1958. Braniff also appeals
from an order denying its motion to
amend its complaint by adding as plain-
tiffs the flight crew of the airplane.

Braniff was the airline operating the
plane which crashed. Addabbo and
Berg [1] were passengers on the plane.

The gravamen of the complaints is
that the crash was caused by the failure
of an engine manufactured by defend-
ant. Defendant sold the engine to
Douglas Aircraft Co. about July 17,
1956; Douglas installed it in a Douglas
DC–7C aircraft which it sold to Bran-
iff and delivered on October 23, 1956.
Sometime later Braniff removed the
engine from this aircraft and installed
it in the right inboard position of
the Douglas DC–7C which crashed.

Braniff's action is based upon negli-
gence and also breach of both express
and implied warranty. Berg sued origi-
nally only on the ground of negligence.
Later he commenced a separate action in
implied warranty, his motion for leave
to amend his complaint to assert that
claim in the negligence action having
been denied. Berg v. Curtiss-Wright
Corp., 224 F.Supp. 236 (S.D.N.Y.1963).
Addabbo also sues on implied warranty.
The cases were consolidated for trial to-
gether with certain related actions.[2] A
jury trial was had, limited by agreement
to the issue of liability.

At the end of the plaintiff's case, Cur-
tiss-Wright made several motions which
the court collectively treated as a motion
pursuant to Rule 50(a) of the Federal
Rules of Civil Procedure for a directed
verdict. Curtiss-Wright also sought dis-
missal of the implied warranty claims on
the ground that they were barred by the
statute of limitations. The court di-
rected a verdict for Curtiss-Wright on
the issues of negligence and breach of
warranty. It held that the claims of
Berg and Addabbo based on implied
warranty were barred by the statute of
limitations.

We reverse the determination of the
district court as to the claims sounding

---

1. Berg died in the course of the litigation
and Stein, executor of his estate, was
substituted.

2. One of the related actions was a suit by
Braniff against Douglas; it was discon-
tinued during the trial.

in negligence, holding that there was sufficient evidence of defendant's negligence to require submission of that issue to the jury. In all other respects we affirm.

### I.

We are persuaded that there was sufficient evidence of Curtiss-Wright's negligence to take the case to the jury.

Examination of the engine in question after the crash revealed that the number eleven cylinder had failed, that it had separated from the engine, and that its wall was scuffed. A Curtiss-Wright employee testified that the cylinder wall showed evidence of "ladder cracking." There was testimony that overheating of a cylinder can cause scuffing and that scuffing can lead to ladder cracking and eventually to cracking of the cylinder barrel and its separation from the engine. A letter that Curtiss-Wright wrote to Braniff after the crash stated that the "cylinder barrel failures" occurring in the Curtiss-Wright engines were "apparently the result of high combustion chamber temperatures."

The evidence of Curtiss-Wright's negligence included the following:

(1) Curtiss-Wright increased the rating of the engines of this so-called E A series (the type of engine involved here) from the 3250 horsepower of the predecessor D A series to 3400 horsepower. Gregory, an independent engineering consultant, testified that the increase in horsepower raised the temperature in the cylinders, aggravating the scuffing problem and greatly affecting the reliability of the engine. He stated that a reasonable horsepower to take from the engine would have been 3250 rather than 3400.

(2) Curtiss-Wright admitted that the fuel injection pump timing used in the type of engine involved in the crash had caused cylinder temperatures higher than those occurring in a similar Curtiss-Wright engine that used a different timing.

(3) Gregory testified that the use of flexible fuel lines of different lengths to take fuel to the various cylinders caused the cylinders to receive unequal amounts of fuel, resulting in a "large variation" in the temperatures of the cylinders which produced scuffing in the high temperature cylinders.

(4) Gregory testified that the high temperatures in the cylinder caused its separation and Ahlers, another expert witness, testified that the failure of the cylinder caused the crash.

There was evidence that Curtiss-Wright was aware of the scuffing difficulty and knew of instances of cylinder barrel separation by July 26, 1957, nearly eight months before the crash, but took no effective action to remedy the problem.

In reaching our conclusion that there was sufficient evidence of Curtiss-Wright's negligence to require submission of the case to the jury, we do not find it necessary to adopt the rule of Noel v. United Aircraft Corp., 342 F.2d 232 (3d Cir.1964), that a manufacturer is under a continuing duty to improve its product where "human safety" is involved. It is clear that after such a product has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy these or, if complete remedy is not feasible, at least to give users adequate warnings and instructions concerning methods for minimizing the danger.

### II.

Curtiss-Wright contends that Braniff was contributorily negligent as a matter of law.

The principal basis for Curtiss-Wright's position is Braniff's admission that "on or about July 8, 1959, [Braniff] made a determination upon information then available that Captain Thomas Donald George [the pilot] was responsible for the accident * * *" and that it discharged him on this ground. There is no reason to believe that in holding the pilot "responsible"

Braniff was applying the standard of care imposed by law. The admission states that the determination of responsibility was based on information available to Braniff by July 8, 1959. That date was more than eight months before the commencement of this action. Braniff may well have acquired further information during that period. The admission was merely evidence of contributory negligence which Braniff could seek to rebut at trial.

It is not necessary to record in detail certain other evidence of contributory negligence. We are convinced that all of this evidence presented an issue for the jury.

### III.

We hold that the causes of action of Braniff, Addabbo and Berg based upon implied warranty are all barred by the statute of limitations. This makes it unnecessary for us to discuss the district court's decision to direct a verdict against Braniff on that cause of action.

Under New York law, the action by Braniff, an Oklahoma corporation, was untimely if it was barred by either the laws of New York or the laws of Florida. New York Civil Practice Law and Rules § 202 (McKinney 1963).[3]

■ The action was not timely under the Florida statute of limitation, Fla. Stat. § 95.11(5)(e) (1967), F.S.A., as construed in Creviston v. General Motors Corp., 210 So.2d 755 (Fla.Dist.Ct. App.1968)—a case that had not yet been published when the district court ruled

that the action was timely. *Creviston* holds that the period of limitation in an implied warranty action is three years and that the action accrues at the time of sale. We believe that New York would accept the holding of the Florida appellate court in *Creviston* as representing the law of Florida, particularly since it is in accord with New York law as to accrual of the cause of action. (See *infra.*) The engine was sold in 1956; therefore commencement of the suit in 1960 was not timely.

■ Berg and Addabbo were both New York residents; their implied warranty actions were thus subject to New York's six year statute of limitation. New York Civil Practice Law and Rules §§ 213(2), 202 (McKinney 1963). Under New York law, these actions accrued at the time of the sale in 1956. See Schwartz v. Heyden Newport Chemical Corp., 12 N.Y.2d 212, 215, 237 N.Y.S.2d 714, 716, 188 N.E.2d 142, 143, 4 A.L.R. 3d 814, modified, 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253, cert. denied, 374 U.S. 808, 83 S.Ct. 1697, 10 L. Ed.2d 1032 (1963).[4] Since Berg commenced his action in 1963 and Addabbo commenced his in 1964, both actions were untimely. Nor would they be timely even if we were to accept the contention that the date of accrual is governed by Florida law; *Creviston* makes clear that Florida follows the New York rule.

### IV.

■ Braniff claims that Curtiss-Wright made express warranties con-

---

3. That Florida is the state where the cause of action accrued for purposes of N.Y. CPLR § 202 (McKinney 1963) is not contested.

4. *Schwartz*, a case involving the sale and use of injurious medication, concerned the date of accrual of a negligence cause of action and an implied warranty cause of action; it held that the implied warranty action accrued at the time of sale and that the negligence action accrued when the medication was administered.

The *Schwartz* holding on implied warranty actions is not affected by the recent New York Court of Appeals 4–3 de-

cision in Flanagan v. Mount Eden General Hospital, 24 N.Y.2d 427, 301 N.Y.S. 2d 23, 248 N.E.2d 871 (April 17, 1969). *Flanagan* holds that in medical malpractice actions for negligence, involving the insertion of a foreign object into a patient's body, the cause of action does not accrue until the object is discovered. The court discussed *Schwartz* but was concerned only with its holding regarding the accrual of the negligence action. The court in *Flanagan* distinguished *Schwartz* and clearly limited *Flanagan's* application to foreign object malpractice cases.

 

cerning the engine in two pamphlets: "Facts about the Wright Turbo Compound" and an engineering report on the "TC18 Engine Operating Margin." The foreword to the former publication states that its purpose is to "explain the principles of the turbine system." On the cover of the engineering report is the statement: "This report is for information only and does not supersede, cancel, or change applicable engine specification or operating instructions." The statements in these two informational pamphlets are not warranties.

## V.

■ The district court denied Braniff's motion to amend its complaint by adding the members of the flight crew as plaintiffs. It appears that even if the requested amendment were made, the complaint would not state a cause of action on behalf of the crew. If that is the case, the denial was irrelevant. In any event, the motion in substance is one to permit the crew to intervene. Braniff could not properly make this motion; it must be made by the parties seeking to intervene. Rule 24(c), Federal Rules of Civil Procedure.

## VI.

■ We wish to record our disapproval of the parties' disregard of the provisions of the Federal Rules of Appellate Procedure. Although Rule 30 does not require that the parties agree on the contents of an appendix, it explicitly requires the filing of a single appendix. The parties chose instead to file an appellants' appendix and an appellee's appendix. Thus, in order to consider a given witness' testimony in this highly technical case, it was necessary for us to jump from one appendix to the other. The rule requiring a single appendix was adopted to facilitate our task of judicial review.

Appellants also failed to reproduce in their appendix the two pamphlets, Exhibits 5 and 15A, on which they rely to establish a cause of action for breach of express warranty.

Litigants are advised to consider these remarks as a warning of the possibility of more drastic action by the court in the future.

Affirmed as to all issues except the causes of action for negligence; as to these reversed and remanded for a new trial.