**Frank PAGANUCCI; et al.,**
**Plaintiffs–Appellants,**

**v.**

**CITY OF NEW YORK; Douglas White, Personnel Director of the City of New York; et al., Defendants–Appellees,**

**Hispanic Society of the New York City Police Department and Guardians Association of the Police Department of the City of New York, Defendants–Intervenors–Appellees.**

**No. 1022, Docket 92–9109.**

United States Court of Appeals, Second Circuit.

Argued Feb. 25, 1993.

Decided May 17, 1993.

Ronald Podolsky, New York City, of counsel, for plaintiffs-appellants.

Kenneth Kimerling, New York City (Puerto Rican Legal Defense & Educ. Fund, of counsel), for defendant-intervenor-appellee Hispanic Soc. of the New York City Police Dept.

Robert David Goodstein, New Rochelle, N.Y. (Goodstein & West, New Rochelle, NY, of counsel), for defendant-intervenor-appellee Guardians Ass'n of the Police Dept. of the City of N.Y.

O. Peter Sherwood, Corp. Counsel, New York City (Francis Caputo, Asst. Corp. Counsel, Elizabeth Dvorkin, Asst. Corp. Counsel, of counsel), for defendants-appellees: City of New York; Douglas White; New York City Dept. of Personnel; Lee

Brown; and Police Dept. of the City of New York.

Before: LUMBARD, McLAUGHLIN, Circuit Judges, and DUFFY, District Judge.[*]

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Frank Paganucci, *et al.,* appeal from an order of the United States District Court for the Southern District of New York, Robert J. Ward, *Judge,* granting summary judgment and dismissing the complaint herein and imposing sanctions against counsel for the plaintiffs who had appeared in a prior action and were barred by *res judicata* from asserting the claims herein, 785 F.Supp. 467.

This action has its ultimate genesis in the June 1983 and April 1984 Civil Service Examination ("the Examination"), given to 11,-899 candidates for promotion to the rank of sergeant in the New York City Police Department ("the Department"). Seeking 1,000 new sergeants, the Department compiled a promotion eligibility list ("Eligible List") from the results of the examination. The Eligible List, however, under-represented the percentage of black and Hispanic candidates who took the exam.

Subsequent litigation, initiated by the Hispanic Society of the New York City Police Department (the "Hispanic Society") and the Guardians Association of the Police Department of the City of New York (the "Guardians Association"), produced a stipulated settlement modifying the Eligible List upon an agreement that the Examination had a disparate impact on the black and Hispanic candidates. *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't,* 84 Civ. 6628 (RLC). The settlement agreement sought to eliminate the disparate impact by providing for the promotion of those officers already on the Eligible List, as well as the promotion of black and Hispanic candidates proportionate to black and Hispanic examinees. Judge Carter entered an interim order on November 27, 1985 approving this settlement.

On December 30, 1985, Ronald Podolsky, the attorney for the plaintiffs in this case, filed suit on behalf of a number of candidates who did not make the Eligible List, but who scored equal to or better than the lowest scoring minority candidate promoted under the interim order. In that case, *Marino v. Ortiz,* which was also before Judge Carter, the plaintiffs contended that the proposed settlement deprived them of equal protection of the laws and, as such, violated the Fourteenth Amendment of the United States Constitution.

On April 17, 1986, the district court heard objections to the proposed settlement in *Hispanic Society.* Mr. Podolsky appeared at this hearing to file objections on behalf of white officers who had scored as high or higher than those minority officers who, under the settlement agreement, were to be advanced for promotion. On April 24, 1986, Judge Carter filed an endorsement dismissing the complaint in *Marino v. Ortiz* as an impermissible collateral attack on a consent decree. Subsequently, on June 16, 1986, Judge Carter filed an opinion approving the *Hispanic Society* settlement and, accordingly, rejecting the arguments set forth by Mr. Podolsky on behalf of the objectors. *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't,* 42 Fair Empl.Prac.Cas. (BNA) 905, 40 Empl. Prac.Dec. (CCH) ¶ 36,385, 1986 WL 7014 (S.D.N.Y.1986). Led by Mr. Podolsky, the plaintiffs in *Marino,* and the objecting nonparty police officers in *Hispanic Society,* appealed.

On December 8, 1986, we issued decisions in *Marino* and *Hispanic Society.* In *Marino,* we affirmed the district court's decision dismissing the complaint as an impermissible collateral attack on a consent decree by individuals who could have intervened. *Marino v. Ortiz,* 806 F.2d 1144, 1147 (2d Cir.1986). In *Hispanic Society,* we dismissed the appeal because the officers represented by Mr. Podolsky had never intervened in the case and, therefore, had no standing to prosecute the

[*] Hon. Kevin Thomas Duffy, United States District Judge for the Southern District of New York, sitting by designation.

appeal. *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't*, 806 F.2d 1147, 1154 (2d Cir.1986). An equally divided United States Supreme Court affirmed our decision in *Marino* and the Court unanimously upheld our decision in *Hispanic Society. Marino v. Ortiz*, 484 U.S. 301, 304, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (per curiam), *reh'g denied*, 484 U.S. 1082, 108 S.Ct. 1064, 98 L.Ed.2d 1026 (1988).

The following year, the Supreme Court held that a collateral attack on a Title VII consent decree is permissible. *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). Mr. Podolsky then moved on behalf of the *Marino* plaintiffs for an enlargement of time to file a petition for reargument. We denied that motion in an opinion, stating:

> [t]he motion for an enlargement of time is nothing but an attempt to reopen a final judgment because of a subsequent change in the law. When we take the interest in finality of judgments, particularly those as old as the instant matter, into account, we perceive no persuasive reason to reopen this matter. Movants ... were fully aware of the proceedings leading up to the consent decree in question and, viewing the proceedings as a whole, it is evident that this collateral attack was necessitated in part by their counsel's mistaken belief that they were parties to the class action. *See Hispanic Soc'y*, 806 F.2d at 1152–53.

888 F.2d 12, 13 (2d Cir.1989), *cert. denied*, 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990).

Within days from the denial of *certiorari*, Mr. Podolsky filed the instant complaint against several Municipal defendants on behalf of present and former New York City police officers alleging violations of their Fourteenth Amendment rights. Specifically, plaintiffs alleged that because their scores on the Examination were equal to or better than the scores of some of the minority officers promoted in 1988 pursuant to the *Hispanic Society* consent decree, they were deprived equal protection of the law. Fifty-seven of the plaintiffs were members of the plaintiff

class in *Marino v. Ortiz*. Judge Ward permitted the Hispanic Society and the Guardians Association to intervene as defendants, and subsequently, all parties moved for summary judgment. In addition, the intervenors asked for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The Municipal defendants also sought sanctions, but limited their request only in regard to those plaintiffs whose claims were barred by *res judicata*. On March 10, 1992, Judge Ward granted summary judgment for the defendants, and awarded sanctions, in the form of attorneys fees and costs, against Mr. Podolsky, only, however, with respect to the issue of *res judicata*.

We affirm the district court's grant of summary judgment for substantially the reasons set forth in Judge Ward's comprehensive opinion. Additionally, we affirm the district court's Rule 11 grant of attorney's fees and costs as to the issue of *res judicata*.

Primarily, Rule 11 seeks to discourage "dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process." *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21 (2d Cir.1990). While the aim of the rule is true and clear, its varying objectives necessitate different standards of review in accordance with the violated aspect. In this Circuit, we review the buoyancy of legal arguments *de novo. Id.* Accordingly, the applicable test is whether a reasonably competent attorney would have acted similarly. *Id.* at 22.

The application of this objective standard to the instant case begs for affirmance of the sanctions. Mr. Podolsky's audacious attempt to revisit the *Hispanic Society* settlement as to those plaintiffs who also appeared in *Marino* and had their claims therein dismissed on the merits, is patently frivolous. Even a cursory review of the doctrine of *res judicata* would have so indicated. Furthermore, Mr. Podolsky has demonstrated an utter lack of regard in the face of repeated admonitions concerning the lack of merit of his claims and the perils of further pursuing them.[1] No

---

1. As we stated when we first passed on this matter back in 1986:

> Not only did appellants have notice of the proceedings in Hispanic Society and a sugges-

court should have to endure such unreasonable and inappropriate conduct. Accordingly, the sanctions imposed by the district court on the issue of *res judicata* are affirmed.

The intervenor-appellees have also requested that we impose additional sanctions on plaintiffs counsel pursuant to Rule 38 of the Federal Rules of Appellate Procedure.[2] While such sanctions are certainly warranted due to the frivolity of this appeal, we decline to impose those sanctions at this time.

See also 142 F.R.D. 60.

---

tion to intervene therein, but they actually presented their claims at the objector hearing in that case. Judge Carter considered appellants' claims and found them to be without merit. Thus, the appellants had the opportunity to engage in the original lawsuit and actually presented their claims. As we have said in an analogous context, '[t]he efficient and fair administration of justice requires that litigation of an issue at some point come to an end. And for the appellant, who has had one opportunity already to contest the ... order, the time to relitigate the issue has necessarily run.' *Class v. Norton*, 505 F.2d 123, 125 (2d Cir.1974). *Marino*, 806 F.2d at 1147.

2. Rule 38 of the Federal Rules of Appellate Procedure provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Fed.R.App.P. 38.